## STATUS OF MUTUAL TELEPHONE COMPANIES UNDER THE PUBLIC UTILITIES ACT.

Common Pleas Court of Williams County.

THE MONTPELIER TELEPHONE COMPANY v. THE MONTPELIER MUTUAL TELEPHONE COMPANY ET AL.

Decided, June 27, 1914.

*Telephone Companies—Operating Not for Profit Not Subject to Public Utilities Commission—Burden of Showing Character of Organization—Permissive License to Mutual Company to Operate in a Village—Not Open to Attack by a Company Operating for Profit in Same Territory.*

1. A mutual telephone company, existing and operated as a utility but not for profit, does not come within the jurisdiction of the state public utilities commission and may operate a plant without having first obtained a certificate of necessity.

2. The council of a village has power to grant to such a company permissive license to enter upon the the streets and alleys for the construction and maintenance of its plant; and the fact that the ordinance in which it was attempted to grant such a permissive license was illegally passed does not afford ground for an injunction against such operation at the instance of a company operating telephone lines for profit in the same territory.

*Newcomer & Gebhard,* for plaintiff.
*Charles A. Bowersox* and *Reuben L. Starr,* contra.

SCOTT, J.

For the sake of brevity we omit a recital of all but the substance of the pleadings in this case, and come to state, briefly, the issues of law and fact raised by the respective pleadings of the parties to the cause, and which issues the court is now called upon to decide and determine in the light of the law and the evidence.

The plaintiff contends that the defendants have no right to construct or operate a telephone plant in the village of Mont-

pelier, this county, and bases such contention upon the following reasons:

1. That no franchise was legally passed granting to the defendant, the Montpelier Mutual Telephone Company, the right or authority to invade the said village and the territory adjacent thereto, and to erect or operate a telephone plant therein.

2. That without a franchise the defendant the Montpelier Mutual Telephone Company is without right to contruct a telephone plant or system in the said village, and use the streets and alleys thereof for its said plant.

3. If the defendant is a purely mutual company and is not organized to serve the public, then it can not acquire public property for a purely private purpose.

4. If the defendant is serving, or intends to serve the public, then it must first obtain a certificate of necessity from the public service commission of the state.

5. Plaintiff asserts it has a right to bring this action.

The defendants answer, admitting certain allegations of the petition, and then set forth in detail the plans and purposes for which the Montpelier Mutual Telephone Company was organized, as a partnership, or association of certain persons, as members thereof.

The defendants admit in their answer that the plaintiff company is a tax-payer of the village of Montpelier, and is the owner of a telephone plant therein, the lines of which extend many miles in all directions from said village into the country surrounding said village; that the said plaintiff was granted a franchise to operate and conduct its telephone business within the said village of Montpelier; that the defendant the Montpelier Mutual Telephone Company has done and is about to do many of the acts alleged in the petition of the plaintiff.

The defendants fully set forth in their answer the purposes of said association, and state that said defendant, the Montpelier Mutual Telephone Company, is an institution or an association organized for the purpose of doing business as a telephone company organized and operated as such, not for profit, and

being such creature of the law it does not come within the purview of the so-called public utilities act found in Volume 102, pages 449 to 575, of the acts of the Legislature of the state.

The general denial in the answer of the defendants casts upon the plaintiff the burden of proof as to every material allegation of its petition not admitted by said answer. The reply of the plaintiff casts upon the defendants the burden of proving every material allegation in their answer, save such as are admitted by said reply. The defendants are therefore called upon to prove by a preponderance of the evidence that its association or co-partnership is one that was not only organized as a telephone company not for profit, but that in fact its purpose is to operate as a telephone company not for profit. Upon filing the petition of plaintiff a temporary restraining order issued by action of the probate court. The point is, shall this temporary order be dissolved or made perpetual?

We find ourselves confronted with a heavy **burden in our** attempt to make disposition of and determine the salient legal questions that present themselves before us. That we may at least seem to be methodical in handling this cause we take up first the question relating to the passage of the alleged franchise ordinance, by the council of the village of Montpelier, and under which alleged franchise the defendant company asserts that it has constructed a portion of its plant, and intends to complete the same, and operate said plant under and by virtue of said alleged franchise.

It is admitted by the defendants that said franchise ordinance was not legally *passed* by said council on September 9th, 1913, but defendants strenuously assert that plaintiff can not raise this question. And defendants go further in their contention and say that it is not the *passage of the franchise ordinance* that determines the right of the defendant company to operate its said plant in said village.

The learned judge in the case of *The Paulding Home Telephone Company* v. *The Paulding Mutual Telephone Association* well said:

"It is well settled that a telephone company gets its right to go upon the streets of a municipality with its poles and wires from the state, and, as well stated in 72 O. S., 532, the power of municipal authorities in the premises is merely to agree upon a mode of use, and if no agreement be made within a reasonable time the company may apply to the probate court, which court shall direct the mode of construction, which shall be such as not to incommode the public in the use of the streets. The right thus conferred by the laws of the state is the right of eminent domain, and involves an attribute of sovereignty. It is conferred upon what are known as public service companies and in the operation of what are known as public utilities."

This far we partly concur in what the learned judge said, but we do not concur in his reasoning or judgment upon the main proposition involved in that case.

Not only is it true that a public utility, or a private one for that matter, obtains its license and authority to erect its plant in a municipality from the law of the state, but such company also obtains its license or authority to erect its poles and place thereon its wires upon the public highways of the state from the same source of power.

It is the defendant's contention that they obtained their franchise under favor of the provisions of Section 9170 of the General Code, and that under this statute it had a right to go upon the streets and roads by virtue of the provisions of Section 9178 of the General Code, as decided by our Supreme Court, which decision is found in said 72 O. S., that Section 9170 of the code bestows the franchise, and the only point to be determined between the village of Montpelier and the defendant company is the mode of use under the provisions of said Section 9178. It is further contended by defendants, that while it may be admitted said franchise ordinance was not passed by said council as required by the law of the state, yet said franchise takes the form of an agreement or contract entered into between the village authorities and the defendant company, its officers and agents. We are inclined to acept and adopt this theory. We hold the opinion that said franchise ordinance is a resolution, in force

and effect, or it may be called a proposition submitted by the council of said village on the one hand and accepted by the defendant company on the other, and the defendant company having accepted said proposition, and having acted thereunder by partially erecting and installing its telephone plant in said village, the said franchise ordinance becomes in full force and effect and defendants can not be deprived of the rights and privileges thereunder by any act of the plaintiff or any other person, natural or artifical, save the village authorities themselves, so far as the present rights and interests of the defendant company are concerned. It may be true that the defendant company stands at the mercy of the council of said village relative to said ordinance being repealed, modified or changed, but the plaintiff can have no concern in the destiny of the defendant company. We are inclined to hold and we do hold that said franchise ordinance is one creating a permissive license to the defendant company to go upon the streets of said village, erect and complete its private enterprise, and so long as this license is not revoked it stands in all its legal force and vigor, and protects and shields the defendant company in the operation of its said plant, with as much force and legal effect as if said ordinance had been legally passed by the council of said village.

We come now to discuss the more difficult points that present themselves for determination. The plaintiff vigorously contends that without a franchise the defendant company has no right to construct a telephone plant in said village and use the streets and alleys of said village for the purpose of conducting its business; that if the defendant is a purely mutual company and is not organized and operated for the purpose of serving the public, it has no legal standing, and it can not ask or secure the use of public property for a purely private purpose; and that if the defendant is serving, or "expects" to serve the public as a telephone company it must first obtain a certificate of necessity from the public service commission of the state.

These three several propositions call upon us, among other things, to construe in part the public utilities act of the state

passed May 31st, 1911, and which became operative June 30th, 1911.

This act provides, (a) that a telephone company is a common carrier; (b) Section 4 excepts all public utilities as are operated "not for profit"; (c) Section 54 provides that all telephone companies shall secure a certificate of permission from the public utilities department of the state, when operating, or intending to operate in territory already occupied by a telephone company.

The public utilities commission have decided several times that it does not have jurisdiction over a telephone company organized and incorporated "not for profit."

Many cases may be cited and especially the Farmers' Mutual Telephone Company case, sustaining the contention of the public utilities commission.

The Circuit Court of Morrow County, opinion by Judge Powell, has enunciated this doctrine:

"The construction of a private telephone line and station for the use of a number of persons associated together for that purpose does not constitute a public utility, nor are persons so using such a line subject to control by the public service commission." *Brownsville Telephone Company* v. *Brownsville Farmers' Telephone Co.,* 15 C.C.(N.S.), 508, affirming 13 N.P.(U.S.), 429.

This same doctrine was announced by the circuit court, Third Circuit, Kinder and Crow, Judges (Donnelly dissenting).

. In the case of *Paulding Tel. Co.* v. *Paulding Mutual Tel. Association,* Matthias, Judge, said:

"The defendant is either a public utility or a private enterprise. If the former, unquestionably the public service commission has jurisdiction and it can not proceed until it shall have secured from the commission a proper certificate; if the latter, it does not possess the power of eminent domain, which is essential before it can appropriate to its use the streets, alleys and public ways of said village."

While we hold in highest respect the decision of Judge Matthias in the Paulding county case, yet we are unable to find our-

selves concurring in that decision; we fancy that the learned judge drifted away from the real spirit and reason of the public utilities act and entered that mysterious region, boundless in its extent, and known as "eminent domain." We are inclined to believe that eminent domain has nothing whatever to do with the rights, privileges and destinies of mutual telephone companies in our state. No company or association is attempting, so far as this case is concerned, to condemn or appropriate in the legal sense any public property of any municipality. The defendant company was given merely a permissive grant or license, by the mutual acts of the council of said village and said defendants, to operate a private utility, enterprise, association, or whatever we may call it, in the village of Montpelier, and the territory adjacent thereto.

The fountain or source of power delegated to telephone companies to use the streets of municipalities, byways and highways of the state for telephonic purposes, is the statute law of the commonwealth and no question of eminent domain can enter into a consideration of the questions arising in this case.

The doctrine of "eminent domain" is imbued with the inherent power to condemn private property for public purposes. No one is contending here that either a public or private telephone company in this state can condemn public or private property, and thus by appropriation brought about by condemnation, compel a municipality to permit such company to enter its domain for the purpose of operating a public or private utility. We have said that telephone companies, organized for profit and not for profit, get their authority to erect poles, string wires thereon, establish an exchange and system of telephonic communication for patrons, from the original source, being the sections of the code referred to herein. If the council of a municipality refuse to grant a privilege by ordinance or resolution, to a telephone company to enter upon the streets and alleys of such municipality and do business therein, then such company, whether public or private in its character, is powerless so to enter such municipality for any purpose except as herein-

after stated. If the council of a village or city can not agree with the company or association of persons who seek to obtain a franchise to establish a telephone system within the limits of such city or village as to the mode and manner of operation of such enterprise, then the parties in interest are relegated to secure their rights by action of the probate court of the said county; all this is a wise provision created by said act of the General Assembly of our state. Certain it is that the provision of the law relative to redress to be secured by action and proceedings in the probate court of the county, relates only to instances where the council of the vilage and the telephone company are unable to agree as to the use and mode of operation of such company; if the council of said municipality should act arbitrarily in such matters, then the law sends all parties in interest into the probate court of the county for redress remedy and relief. We can not conceive how the doctrine of "eminent domain," which is said to imply an "attribute of sovereignty" can have anything to do with a solution of the main problem involved in this legal battle between two contending forces. Unconsciously we are led to believe that the rights, privileges and immunities of the defendant company rest upon and abide with the equitable doctrine of permissive license. We are admonished, intuitively, that so long as we keep "on the grass" and do take a flight in a "legal aeroplane" and sail above the clouds, we shall come nearer to a common sense solution of all the questions involved in this important law suit.

A license may be briefly defined as follows. "To grant authority to do an act which, without such authority, would be illegal or inadmissible; remove restriction from by a grant of permission; authorize to act in a particular character, as to license a man to keep an inn; to license a physician to practice his profession upon a sick and suffering public; or to license a lawyer to practice his profession." We have known municipalities in this state to grant, by resolution, enacted by councils licenses to peanut venders and to proprietors of stalls wherein may be plied the art of shining shoes for the public. We imagine that courts

may take judicial notice of the fact that licenses of the kind mentioned and various other kinds are granted by every municipality of the state, wherein the needs of the people require such things.

Coming now to consider briefly some of the cases cited by counsel upon either side of the controversy we take up first the so-called Paulding county case, and without consuming more time we pass it having already indicated our inability to concur in the reasoning and judgment of the learned judge who decided the case.

Next we say a word about the case of *New Ashley Telephone Company* v. *Ashley Tri-County Mutual Telephone Company.* This case was decided by Fulton, Judge, who having carefully embodied in his decision all the pleadings and points filed and raised in that case, followed the decision of Judge Matthais in the Paulding county case.   The case of the *Morrow County Telephone Company* v. *Marengo Mutual Telephone Company,* is one decided by Judge Mansfield of the Common Pleas Court of Morrow County.   It appears from the record in this case that the defendant company through its officers failed to answer fully certain interrogatories submitted to it by counsel for plaintiff. Judge Mansfield says in his opinion that defendants sought to evade full and true answers to interrogatories as to whether defendant company was one organized for profit, and to be conducted for profit, or not for profit, and it appears from the record of that case that the question as to the character of the defendant was the salient point at issue, and the judge held that defendant, having been given an opportunity to make full and complete disclosure as to its real character, evaded the questions and did not fully disclose its character.   The court found, properly, that the burden of proof as to the character of the defendant rested with the defendant and that upon this point the defendant failed to remove the burden of proof and sustain its contention that it was a company organized "not for profit," and a decree was entered in favor of the plaintiff.   There was no attack made in that case against the right of the council of the

village of Marengo to grant a franchise to the defendant company.

In the instant case we have decided that the defendant company has sustained its contention that it is an association or co-partnership organized and to be operated as a telephone company "not for profit."

The court of appeals in the Morrow county case affirmed the lower court, and in the opinion we discover this dictum:

"Inasmuch as the defendant company seeks to obtain the advantage of an exception in the public utilities act, the burden of proof rests upon it to bring its case within that exception and show affirmatively that its business is actually carried on not for profit. We think upon the whole evidence no such showing is made. We think therefore it follows that the defendant company has no right to establish and operate an exchange in the village of Marengo as against the plaintiff company, without first having obtained a certificate of authority therefor from the public utilities commission."

It will be seen from the foregoing that this Morrow county case does not decide any question involved in the instant case.

In the case of *Jackson Center Telephone Company* v. *Farmers' Telephone Company,* decided March 14th, 1914, by the Court of Appeals of Shelby County, we find that the point involved and decided by that court in that case was whether a telephone company organized prior to June 30th, 1911, being the date that the public utilities act became operative, and which company having engaged in business in a municipality prior to said date, could extend its lines into other and adjoining territory after said date. The public utilities act itself exempts telephone companies, organized prior to said last named date, from the operation of the act. The court held that telephone companies organized prior to June 30th, 1911, could extend their lines and business to and within the scope of their primary and secondary franchises, so held, without securing a certificate from the public utilities commission, but that such companies could not extend their line into

new and "undiscovered" territory. Some question was raised in this case as to whether the defendant company was a public service corporation. The court held it was from the nature of its charter, but did not pass upon the question as to whether the defendant was a company organized for profit or not for profit.

The case of *Ada Telephone Company* v. *Dunkirk Mutual Telephone Company,* cited by counsel for defendant, is almost parallel in many ways with the instant case. The petition in that case is very like the one in the instant case. The answer is more brief than that in the case we are considering. The pleadings however in that case raise the very issues raised in this case, and the right of said village to enact such ordinance was attacked for fraud and otherwise by the plaintiff company. The main point however determined by the common pleas court and the Court of Appeals of Hardin county is whether it was incumbent upon the defendant company to obtain a certificate from the public utilities commission of the state granting it the authority to do business as a privae utility. Quoting the brief opinion of the court of appeals we read:

"It clearly appears that the telephone plant of defendant is a utility, operated not for profit, and therefor defendant in not a public utility within the intent of said Section 614-2a, General Code. Hence the operation of said plant in the manner disclosed by the evidence adduced, does not subject defendant to the jurisdiction of the public service commission of Ohio, provided for by Sections 614-1 to 614-82, General Code."

We think this case is decisive of the one at bar. The court of appeals of the third circuit having affirmed the lower court upon every point raised by counsel upon either side, it follows that the decision of Matthais, Judge, in the Paulding county case and that by Fulton, Judge, in *New Ashley Telephone Company* v. *Ashley Tri-County Mutual Telephone Company,* are overruled.

The term "public utility" as used in the so-called public utilities act shall mean and include every corporation, company, co-partnership, person or association, defined in the preceding

section, except such public utilities as operate their utilities not for profit.    Any person or persons, firm or firms, co-partnership or voluntary association, when engaged in the business of transmitting to, from, through, or in this state telephone messages, is a telephone company and as such is declared to be a common carrier as defined in Section 614-2 of the General Code.

Can it be said, and maintained successfully, that the plaintiff has an exclusive right to the streets and alleys in the village of Montpelier for telephone purposes?    We think not.    The plaintiff does not claim or assert any such right, and if we recall correctly, no exclusive franchise in Ohio can be granted to any corporation, firms or persons.    What is the policy and purpose of the public utilities act?    Is it not regulatory in its operation? We answer in the affirmative.    We have in existence in Ohio two great classes or kinds of public utilities; one is organized and operated for profit; the other not for profit.    Which of these two classes or kinds of public utilities does the public utilities commission of our state exercise control and jurisdiction over? You answer of course the one for profit.    Why?    Because we know that "In the corrupted currents of this world offenses' gilded hand may shove by justice; and oft 'tis seen the wicked prize itself buys out the law."    And so it has come to pass after many years of ceaseless struggle by the people, laws have been enacted to curb and control corporations, created for profit.    A little association of people, a copartnership if you please, organized and existing for a purpose other than that of profit, needs no curbing or controlling.    Not many years ago there was a time when a cry rent the air , which came from independent telephone companies, protesting against the Central Union Telephone Company as constituting a giant trust and monopoly. These little independent telephone companies have outgrown their swaddling clothes, and having assumed mighty proportions, now parade before the people the same "spectre" that the Central Union Telephone Company flaunted in their face but a brief time since    The overshadowing policy of the public utilities law is to regulate the rate of charges and to fix schedules

of prices of telephone companies and other corporations, doing business in this state for profit. No utility or corporation in Ohio in these days of evolution and progress can form or create a trust or combination in restraint of trade. No utility, which term includes all classes of coporations and combinations, can increase, or, I take it, decrease its capital stock or amount of bonds without getting a certificate of permission so to do of and from the public utilities commission of the state. All this may be said to be a protection to the people against oppression and unfair and unjust actions on the part of public utilities created and operated for profit, and to avert a flood that might come from "watered stock."

The public utilities commission of Ohio has said to the defendants by its letter introduced upon the trial, that it has no control over its interests, or its destiny. This being true does it not follow, as the night the day, that the defendants, and those whom they seek to give the right to enjoy the fruits and benefits of a somewhat modern invention, can accept the invitation, to place in their homes and places of business a telephone? Must many thousands of people of all classes be deprived of this service because to bestow upon them the privilege many of their neighbors enjoy, a war of competition might arise in the community? Are the farmers of this state to be shackled in the enjoyment of a common necessity, because forsooth some telephone corporation, existing and operating for profit in the community, might be met with competition? Because dividends might be impaired and lessened? Who is there among us that will answer these questions in the affirmative? This court is one that will not venture so to make answer, and we assume much solace in going upon record as being opposed to any law that curbs and stifles competition, or works in restraint of trade or commerce. For many years the people of our commonwealth, as well as those of the nation, have been fighting a battle of freedom, and against oppression, seeking to immure themselves from the encroachments that have been forged upon them by corporations, seeking to compel the people "to pay the price,"

It seems to us that the time is ripe when every citizen of this land ought to have the inalienable right, not only to ''worship God according to the dictates of his own conscience,'' but, also to enjoy every privilege and immunity that may be enjoyed by any other citizen of the community. Is there any law of the land that forbids or prohibits a peaceful, law abiding citizenship from colonizing its best interests, and mutually agreeing to band themselves together as an association of persons and own and operate a mutual telephone company, or a mutual insurance company, or any other kind of a mutual company? We know of no such law, and if such existed, we would not follow it, for the great law of our Creator rises higher in the scale of justice and human liberty than any ''man-made-law'' of any land.

It seems to us that the central question involved in this legal battle is one of equality upon the one hand and money upon the other. More than a century ago a little band of lovers of liberty fled to the shores of this Republic and colonized themselves into a band of Christian, God-fearing people; they left a land of oppression and came to build up a land of freedom. Since that time evolution has worked wondrous changes. We now live in a land of liberty and plenty. Every man is equal before the law. This great doctrine of ''equality'' is not founded alone upon the written or unwritten law of our land, but it was promulgated nearly two thousand years ago by that Man whose sore and weary feet were washed by the waves that lashed the shores of Galilee. And, so, it has come to pass through years of progress that a farmer who toils and sweats upon his broad acres, is just as good as any man who does not so toil and sweat.

Coming quite abruptly to conclude this somewhat laborious and extended effort we hold:

1st. That the alleged franchise ordinance of the village of Montpelier, although not legally passed, yet the same by its terms and conditions granted to the defendant company, its officers and agents a permissive license to enter upon the streets and alleys of that municipality, erect its poles, string its wires and establish its central office and exchange in said village.

2d.  That the defendant company is a mutual telephone company, organized, existing and to be operated in the future as a utility not for profit.

3d.  That, being such mutual company, it does not come within the control or jurisdiction of the public utilities commission of Ohio, and that it is entitled to operate its plant, without its first having obtained a certificate of necessity from said public utilities commission of the state.

4th.  That, being such mutual telephone company, operating and intending to operate not for profit, it is such a creature of the law as that the council of said village of Montpelier had a legal right to grant to it a permissive license, to do the things mentioned and set forth in the ordinance of said village.

Decree accordingly.